IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**ALVIN DAVIS, JR.**                                                                      **PLAINTIFF**

**V.**                     **CIVIL ACTION NO. 1:14CV67-DAS**

**CAROLYN W. COLVIN,** Acting
**Commissioner of Social Security**                                                 **DEFENDANT**

### MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying the application of Alvin Davis, Jr. for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. After considering the issues raised and after conducting an oral argument on the matter, the court finds as follows

### I. BACKGROUND

Plaintiff was born on February 19, 1966 and was forty-seven years old at the time of the ALJ's decision. He is a high school graduate, and his relevant work experience was primarily as a truck driver, although he also served as a janitorial worker. Plaintiff contends that he became disabled based on a combination of severe physical impairments, including morbid obesity, Type II diabetes mellitus, hypertension, obstructive sleep apnea with daytime sleepiness, gout, chronic lower back pain, and shortness of breath caused by bronchitis and sinusitis. The plaintiff's

alleged prescriptions as of the date of the ALJ hearing included Glipizide (diabetes), Metformin (diabetes), Novolog 70/30 (diabetes), Zolpidem (sleep apnea), ED-A-Hist and Azithromycin (respiratory), Lortab (back pain), Naproxen (back pain), Lisinopril (hypertension), Hydrochlorothiazide (fluid), Prilosec (acid reflux), and Simvastatin (cholesterol). The plaintiff also had been prescribed Nuvigil in the past, which is used to treat excessive sleepiness caused by sleep apnea or narcolepsy.

In his decision, the ALJ found the plaintiff suffered from the following severe impairments: diabetes mellitus, hypertension, sleep apnea, and obesity. The ALJ found the plaintiff's back pain secondary to degenerative arthritis and gout "were not severe within the meaning of the Social Security Act." The ALJ based these negative findings on the lack of objective medical evidence for each condition. Similarly, plaintiff's allegation of narcolepsy was discounted because "absolutely no objective evidence within the record to substantiate a diagnosis of narcolepsy" existed. Plaintiff's allegations of bronchitis and sinusitis were likewise discounted. Again, the ALJ found they were not supported by the evidence in the record, and the plaintiff's subjective complaints regarding them lacked credibility.

After reviewing plaintiff's severe impairments, the ALJ found that none met the listed impairments in Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ then determined that the plaintiff had the residual functional capacity (RFC) to perform light works as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

In arriving at this RFC, the ALJ discounted the limitations of plaintiff's hypertension and diabetes mellitus because treatment records showed they could be controlled with medication. The plaintiff's back pain and gout were likewise discounted because, based on the medical

2

records before him at the hearing, they only accounted for three of his many visits to the hospital. Finally, although sleep apnea was deemed a severe impairment, no limitations were discussed or assigned for plaintiff's sleep apnea during the ALJ's RFC determination.

The ALJ then asked the vocational expert whether jobs existed in the local or national economy that a hypothetical individual with various limitations similar to some or all of those alleged by the plaintiff could perform. The vocational expert answered in the affirmative and provided the ALJ with three jobs: furniture rental clerk, office helper, and a customer service representative. The ALJ ultimately found the plaintiff was not disabled within the purview of the Social Security Act.

On April 18, 2013, the plaintiff filed a request for review and on January 6, 2014, he submitted a brief in support of his request for review. Along with his request, the plaintiff submitted additional medical records that had not been presented to the ALJ. Nevertheless, on March 18, 2014, the Appeals Council denied the plaintiff's request, and the plaintiff filed the present action.

## II. STANDARD OF REVIEW

To determine disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental

---

[1] *See* 20 C.F.R. §§404.1520, 416.920 (2010).
[2] *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).
[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

ability to do basic work activities…"[4] At step three, the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel*, 197 F.3d 194, 196 (5th Cir. 1999) (citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner's,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v.*

---

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).
[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).
[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).
[7] 20 C.F.R. §§ 404.1520(g), 416.920(g) (2010).
[8] *Muse*, 925 F.2d at 789.
[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

4

*Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 289 L.E.2d 842 (1971)).

### III. DISCUSSION

In the present action, the plaintiff makes essentially two arguments. First, the plaintiff argues the Appeals Council erred when it failed to consider the evidence submitted for the first time to the Council and not considered by the ALJ. Next, the plaintiff argues the ALJ's assessment of his RFC was not supported by substantial evidence. Specifically as to this second issue, the plaintiff points to the ALJ's decision to discount the opinion of his treating physician and his failure to account for the plaintiff's complaints of sleep apnea. Finally, the plaintiff contends the RFC is flawed because the ALJ failed to include a sit/stand option. The court will address each of these issues in turn.

#### A. Additional Medical Evidence

Plaintiff first argues that the Appeals Council failed to follow the law when it refused to consider portions of the additional evidence submitted to it in support of his request for review. In its Notice of Appeals Council Action, the Appeals Council explained:

> We also looked at seven pages of evidence from Dr. Anthony dated June 3, 2013, twenty-one pages of evidence from Oktibbeha County Hospital dated June 21, 2013 to December 18, 2013, six pages of evidence from Baptist Memorial Hospital dated September 2, 2013, and six pages of evidence from Dr. Eze dated

5

> May 1, 2013 to May 6, 2013. The Administrative Law Judge decided your case through March 28, 2013. *This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 28, 2013.*

Although the plaintiff concedes these documents were generated after the ALJ's decision, he argues that the Appeals Council failed to investigate whether any portions of the additional, postdated evidence related back to the relevant time period. Specifically, the plaintiff argues that Dr. Anthony's medical source statement – the seven pages of evidence from Dr. Anthony – and at least portions of the six pages of evidence from Dr. Eze related back to the relevant time period.

The Commissioner failed to address plaintiff's relation-back argument in her Memorandum in Support of the Commissioner's Decision. Instead, the Commissioner argues that the "Appeals Council's denial of review is not separately reviewable by this Court." (citing *Higginbotham v. Barnhart*, 405 F.3d 332, 336-37 (5th Cir. 2005)). In other words, the Commissioner argues that the plaintiff's claims of error specifically directed at the Appeal's Council denial of review are outside this court's jurisdiction under 42 U.S.C. § 405(g).

The court rejects the Commissioner's argument. *Higginbotham* clearly held that a denial of review by the Appeals Council is separately reviewable.[11] Therefore, whether the Appeals Council failed to follow the law is within the purview of this court's review. According to its own regulations, "if new and material evidence is submitted, the Appeals Council *shall* consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision…" 20 C.F.R. § 416.1470(b) (emphasis added). Based

---

[11] A claimant may obtain review of "any final decision of the Commissioner of Social Security." 42 U.S.C § 405(g). Because 42 U.S.C. § 405(g) does not provide a definition of "final decision," the Fifth Circuit has interpreted to include "the Appeals Council's denial of a request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

on its Notice of Appeals Action, it is clear that the Appeals Council failed to consider whether the postdated evidence related back.

For example, one portion of Dr. Eze's medical records provided: "Patient here today for follow-up on continuous lower back pain since truck turned over on him in 2007." Another example can be found in Dr. Anthony's medical source statement, wherein he explains that the plaintiff has sporadically come to his office for treatment since 2009 in response to a question concerning the "[n]ature, frequency and length of contact" of his contact with the plaintiff.

This court finds that the Appeals Council erred when it dismissed medical evidence from two treating physicians that appears to relate back to the relevant time period. Dismissing such evidence violated 20 C.F.R. § 416.1470(b). However, this court must still adhere to the substantial evidence doctrine, which requires this court to "review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 281 (5th Cir. 2006).

### B.     Residual Functional Capacity

Next, the plaintiff argues the ALJ's assessment of his RFC was not supported by substantial evidence. Specifically, the ALJ found:

> [Plaintiff] can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk six hours of an eight-hour workday and sit intermittently during the remaining two hours of an eight-hour workday. He can occasionally balance, stoop, crouch, kneel, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds.

#### 1. Treating Physician

The plaintiff's first argument related to this RFC concerns his treating physicians, Dr. Placid Eze and Dr. Michael Anthony, and things here are a bit confused. When the ALJ made

his decision, he had before him medical records from Dr. Anthony (but no MSS) and an MSS from Dr. Eze (but no medical records). Dr. Eze's MSS included an RFC drastically limiting the plaintiff's ability to conduct work related activity. It is confusing because after examining the record – and the Commissioner concedes the issue – it is clear the ALJ thought Dr. Eze's MSS came from Dr. Anthony. [12] Consequently and not surprisingly, the ALJ found numerous inconsistencies between the medical records (from Dr. Anthony) and the RFC (from Dr. Eze). These inconsistencies, at least in part, caused the ALJ to discount the limitations Dr. Eze provided in his RFC. He afforded "little weight to Dr. Eze's RFC because it was not supported by his own treatment records and appeared to be based on the claimant's subjective complaints." Instead, he afforded "significant weight to State Agency Physician Karen Hulett's opinion that plaintiff could perform a full range of light work because it was consistent with the preponderance of the medical evidence." While the ALJ's mistake was a glaring one, the commissioner argues the error was harmless and that his opinion is nonetheless supported by substantial evidence.

Generally, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). However, a treating physician's opinions are not conclusive: "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Id*. "Recognized 'good cause' exceptions include 'disregarding statements that are brief and conclusory, *not supported by medically acceptable clinical laboratory diagnostic techniques*, or otherwise unsupported by the evidence.'" *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005)

---

[12] To add to the confusion, Dr. Anthony also provided an MSS with an RFC, but that report was produced subsequent to the ALJ's decision and only to the Appeals Council.

(emphasis added). However, if the record contains no reliable medical evidence from a treating or examining physician controverting the claimant's treating physician, the ALJ may reject the treating physician's opinion only if a detailed analysis of his views is conducted pursuant to 20 C.F.R. § 404.1527(d)(2). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).[13]

In his medical source statement, Dr. Eze organized plaintiff's functional limitations into six separate groupings, but only three of these groupings are relevant here: "exertional limitations," "manipulative limitations" and "environmental limitations." The other three groupings are irrelevant to this review because the functional limitations they contain are not at odds with the ALJ's RFC determination.

According to Dr. Eze's RFC, the "exertional limitations"[14] assigned were based on plaintiff's "chronic back and right knee pain requiring steroid shots in the past." Similar limitations are echoed in Dr. Anthony's RFC submitted after the ALJ's decision. Despite plaintiff's assertion that the RFC's from both Drs. Eze and Anthony "comport with one another and directly [contradict] the opinion of the non-examining, non-treating DDS physician, as well as the ALJ's RFC assessment," these medical opinions are still largely unsupported by objective medical evidence.

Although the subsequently submitted evidence shows that the plaintiff sought medical attention for lower back pain from Dr. Eze on at least six occasions, which is substantially more

---

[13] Plaintiff's brief argues that the ALJ erred by failing to consider the *Newton v. Apfel* factors in his written decision. Although the ALJ did not conduct this analysis, he was not required to do so. Dr. Fleetwood, an examining physician, submitted reliable evidence controverting the evidence provided by plaintiff's treating physicians. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (holding that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)").

[14] Plaintiff can lift and carry less than 10 pounds occasionally and frequently. Plaintiff can stand and/or walk less than 2 hours of an 8-hour workday. Plaintiff must periodically alternate between sitting and standing to relieve pain or discomfort.

than the ALJ found in the record at the time of his decision,[15] the treatment records provide only minimal objective medical findings supporting his complaints. Doc. 9, pg. 68 ("Increased pain with range of motion of spine"); Doc. 9-1, pg. 715 ("Lumbar/sacral are tender to palpitation"). Moreover, out of more than thirty patient encounters between Dr. Anthony and the plaintiff, only two objective findings regarding lower back pain could be located. Doc. 9-1, pgs. 556 ("Back: normal except mid low back pain hurt to flex and extend") & 687 ("normal except pain right lower si joint area"). And like Dr. Eze's findings, Dr. Anthony's did little more than restate the plaintiff's subjective complaints of pain. In fact, the only truly objective medical evidence available undermines both treating physicians' RFC's. Dr. Fleetwood, a consultative examiner, had x-rays conducted on plaintiff's lower back. Although they showed some degenerative changes in the posterior facet joints and a somewhat narrowed disc space, they indicated the vertebral body and disc space height were good, overall. And during her physical examination of the plaintiff, she noted that he had no tenderness in his back, walked normally on his feet, toes and heels, and that he could "flex and touch 1 inch above his toes," as well as "squat and recover."

Plaintiff's right knee pain is, likewise, unsupported by objective medical evidence. A review of Dr. Anthony's voluminous treatment records indicates that he has never treated plaintiff for pain in either of his legs. Dr. Eze's treatment records only mention right leg pain on one occasion, and no medically determinable impairment could be gleaned from that treatment record. Doc. 9-1, pg. 707 ("Joint pain" was listed under the section for diagnoses). Furthermore, according to his medical records, plaintiff saw Dr. Eze on at least five more occasions after this diagnosis, and he failed to complain about right leg pain in any one of those subsequent visits. *Id*.

---

[15] "Treatment records received from his primary care physician reflect only two complaints of lower back pain…" Doc. 9, pg. 82.

10

at 709, 711, 713 (in a follow up appointment for gout in his right elbow, the treatment record indicates "[p]atient voices no other complaints at this time"), 715 & 717.

Dr. Eze's "manipulative limitations"[16] were based on "arthritic symptoms and muscle weakness." Both Dr. Eze's and Dr. Anthony's treatment records provide some objective support for these limitations, because the plaintiff had been seen on a handful of occasions for gout-related illness. Doc. 9-1, pgs. 711 (diagnosed with "gouty arthropathy NOS") & 713 (plaintiff stating that "his right elbow is better since taking "Allopurinol and Colcrys," which are commonly used to treat gout). The treatment records also contain a diagnostic lab test showing that plaintiff's uric acid was "out of range," which establishes that he did suffer gout on at least one occasion. *Id*. at 721. So unlike plaintiff's complaints of lower back pain, medically acceptable laboratory findings do establish plaintiff's gout as a medically determinable impairment. Yet, substantial evidence establishes good cause for the ALJ to disregard the manipulative limitations in Dr. Eze's RFC.

Once a medically determinable impairment is established, the ALJ is instructed to evaluate the intensity and persistence of the impairment's symptoms to determine how they limit the claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c)(1). The impact of these symptoms is to be considered when formulating the claimant's RFC. *Id*. at (d)(4). However, symptoms will not be found to affect the claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present. *Id*. at (b).

Dr. Eze's limitations were assigned solely to plaintiff's left arm, which was never treated for the medically determinable impairment of gout. Dr. Eze's treatment records indicate that he only treated plaintiff's left arm one time for "arthritis symptoms" and "muscle weakness," but he never diagnosed plaintiff with any medically determinable impairment, and no objective medical

---

[16] Plaintiff's left arm is limited in reaching, handling and fingering. Doc. 9-1, pg. 547.

evidence substantiates the source of the pain found in Dr. Eze's RFC. Dr. Anthony's RFC, on the other hand, included 50% limitations on both of the plaintiff's arms. However, Dr. Anthony's treatment records indicate that he has never treated either of plaintiff's arms. Therefore, good cause exists to disregard the medical opinions of Drs. Eze and Anthony because they are unsupported by the evidence.

The inquiry does not end there, however. Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ is instructed to consider any other evidence submitted about the claimant's symptoms, including the claimant's own subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3). This requires the ALJ to determine the credibility of the claimant's statements regarding his symptoms and their functional effects. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995); *see also Salgado v. Astrue*, 271 Fed. App'x 456, 459 (5th Cir. 2008) (analyzing claimant's statements about limiting effects of pain under SSR 96-7p). In this case, the plaintiff complained of his gout at the hearing.

However, the ALJ found that "the objective evidence does not lend credibility to the claimant's alleged functional limitations and his allegations are so varying that they cannot be depended on to present a credible picture of his abilities and limitations." Substantial evidence supports this finding because, contrary to plaintiff's hearing testimony that he suffers from gout "every three or four months" (Doc 9, pg. 106), the evidence shows plaintiff only sought medical attention for gout-related illness on two occasions. Doc. 9-1, pgs. 697 (possible gout in leg) & 711 ("gout arthropathy NOS" in right arm). The only other gout-related treatment record indicated that plaintiff's gout could be controlled through medication. *Id*. at 713 ("patient states that his right elbow is better since taking Allopurinol and Colcrys"). [17]

---

[17] When conditions have been shown to be controllable through proper medication, they are not disabling. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

12

Finally, Dr. Eze's RFC included "environmental limitations"[18] because plaintiff was "[h]ighly sensitive to noxious fumes that worsens with increase in age." Doc. 9-1, pgs. 548-549. After reviewing the treatment records from Drs. Eze and Anthony, the only conceivable impairments supporting these limitations are plaintiff's previous diagnoses of upper respiratory-related illness. However, among treatment records spanning from 2002 to 2013, only two instances can be found where plaintiff sought treatment from Dr. Eze for these ailments. Doc. 9-1, pgs. 696 ("[h]as sinus congestion and severe pharyngitis x 4 days") & 705 ("patient voices complaints of sore throat, cough and runny nose x 3-4 days"). Moreover, plaintiff's attempt to substantiate these limitations with Dr. Anthony's "comport[ing]" RFC (*see* Doc. 14, pg. 758) proves detrimental.

Despite having treated plaintiff for upper respiratory illness on at least thirteen separate occasions, Dr. Anthony's "environmental restrictions" are far less limiting[19] than Dr. Eze's. Doc. 9-1, pgs. 414, 416, 418, 420, 421, 430, 432, 433, 436, 439, 443, 446 & 447. But perhaps even more damaging than the discord between the two sets of environmental limitations are Dr. Anthony's treatment record notes. Dr. Anthony noted that plaintiff specifically requested codeine/Phenergan cough syrup during many of his visits. Doc. 9-1, pgs. 420, 421, 433, 439, 443 & 446. This led Dr. Anthony to believe plaintiff was not only addicted to the narcotic-based cough syrup (*id*. at 436), but that he was also misusing (*id*. at 439) and overusing the syrup. *Id*. at 553. Dr. Fleetwood even noted that plaintiff "kind of [got] defensive" when she questioned him in detail about his upper respiratory problems during her examination, which could be construed to lend credibility to Dr. Anthony's fears. *Id*. at 393.

---

[18] Plaintiff should avoid all exposure to extreme heat and cold, wetness, noise, vibration, fumes, odors, dust gases, poor ventilation and hazards (machinery, heights, etc.). Doc. 9-1, pg. 548-49.
[19] Plaintiff should avoid *moderate* exposure to extreme heat and high humidity, and he should avoid *concentrated* exposure to extreme cold, fumes, odors, dusts, gases, perfumes, cigarette smoke, soldering fluxes and solvents/cleaners. Doc. 9, pg. 40 (emphasis added).

Dr. Fleetwood's physical examination of the plaintiff also yielded objective medical evidence contrary to the medical opinions of plaintiff's treating physicians. Her findings regarding his alleged upper respiratory impairments were unremarkable: he did have some "nasal congestion" and seemed to breathe "through his mouth" (*id*. at 395), but the physical examination of his lungs revealed that they were "clear" and did not cause "wheezing." *Id*. at 394.

In sum, the ALJ's decision to disregard Dr. Eze's and Dr. Anthony's more restrictive functional limitations is supported by substantial evidence. Although medical opinions from treating physicians are generally entitled to controlling weight, good cause existed for the ALJ to disregard the limitations suggested by plaintiff's treating physicians. These limitations were largely unsupported by the treating physicians' treatment records and failed to take into account the lack of plaintiff's credibility. Moreover, the treating physicians' RFC's were not entirely consistent with one another, which is especially true concerning their environmental limitations.

### *2. Sleep Apnea*

Next, the plaintiff argues the ALJ erred when after finding sleep apnea was a severe impairment, he failed to include in his RFC any limitations attributable to it. ALJ's are required to develop the facts; however, claimants bear the burden of proving disability. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Merely establishing that they suffer a severe impairment is not enough because "not all 'severe' impairments are disabling." *Rivera v. Barnhart*, 64 Fed. App'x 416, at *1 (5th Cir. 2003) (quoting *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988)). If an ALJ errs when he fails to include a limitation, his decision should not be reversed "unless [the claimant] can show that [he] was prejudiced by such error." *Rivera*, 64 Fed. App'x 416, at *1. To

14

establish prejudice, the claimant "must demonstrate that [he] could and would have adduced evidence that might have altered the result." *Id*.

After considering the matter, the court finds the plaintiff has failed to articulate any specific limitations that should have been included in the ALJ's RFC for his sleep apnea. Even the two RFC's submitted by plaintiff's treating physicians fail to articulate any specific limitations pertaining to plaintiff's sleep apnea. Based on the ALJ's RFC, the vocational expert testified that plaintiff could perform work as a furniture rental clerk, office helper, and a customer service representative/clerk. There is no evidence in the record showing that the plaintiff's sleep apnea would affect his ability to perform these jobs. Given the record before the court, plaintiff has not shown he was prejudiced by the ALJ's failure to include a sleep apnea limitation in his hypothetical.[20] Therefore, substantial evidence supports the ALJ's RFC determination.

3.  *Sit/Stand Option*

In his written decision, the ALJ's RFC included the following limitation: "[plaintiff] can stand and/or walk six hours of an eight-hour workday and sit intermittently during the remaining two hours of an eight hour workday." However, as plaintiff correctly points out, the "ALJ failed to include in his hypothetical question his limitation that the hypothetical claimant would need to sit intermittently during the remaining two hours of an eight-hour workday." Rather, the hypothetical was posed in a more general manner, using the exertional levels defined at 20 C.F.R. § 404.1567. The ALJ's denial of benefits was based on the vocational expert's opinion regarding an individual who was "limited to the light range of work as defined by the

---

[20] Although substantial evidence supports the ALJ's rejection of plaintiff's allegations that he suffered from narcolepsy, the fact that plaintiff's treating physicians also included no limitations for this alleged impairment establishes that plaintiff was not prejudiced by the ALJ's refusal to include narcolepsy-related limitations in his RFC determination.

15

Regulations." Based on this hypothetical, the vocational expert testified that jobs existed in the local economy that an individual limited to a light range of work could perform: furniture rental clerk, office helper, and customer service representative.

When relying on a vocational expert's testimony in support of a denial of benefits, an ALJ's hypothetical must reasonably incorporate all of the impairments or limitations supported by the evidence in the record and recognized by the ALJ into his hypothetical question. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). If an ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). However, "[p]rocedural perfection in administrative proceedings is not required, and "this court will not vacate a judgment unless the substantial rights of a party have been affected." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

The question presented for this court's review is whether the hypothetical posed by the ALJ, which limits the plaintiff to a light range of work as defined by the regulations, *incorporates* the limitation that plaintiff must sit intermittently during the remaining two hours of an eight-hour workday. The court finds that it does.

According to 20 C.F.R. § 416.967(b), light work is defined as:

[L]ifting no more than 20 pounds at a time with *frequent* carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities…

(emphasis added). Social Security Ruling 83-10, in turn, defines "frequent" as:

[O]ccurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, *the full range of light work requires standing or walking, off and on, for a total of*

*approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.*

SSR 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at * 6 (emphasis added).

Therefore, although the hypothetical posed to the vocational expert was more abstract than the RFC found in his written decision, the more specific, "sit-intermittently" limitation was reasonably incorporated into the ALJ's hypothetical. He specifically invoked the limitations for a "light range of work as defined by the Regulations." As demonstrated above, his invocation of the regulatory definition of light work entirely encompasses the language used in his written decision, i.e., that "[plaintiff] can stand and/or walk six hours of an eight hour workday and sit intermittently during the remaining two hours of an eight hour workday." And although it does not salvage a prejudicially defective hypothetical, which is not the case here, plaintiff's representative was provided an opportunity to remove any vagueness during her examination of the vocational expert.[21] Consequently, the absence of a specific, "sit-intermittently" limitation does not constitute reversible error.

The court, therefore, finds that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 12th day of March, 2015.

    /s/ David A. Sanders
    UNITED STATES MAGISTRATE JUDGE

---

[21] S*ee Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (requiring that claimant's representatives be afforded an opportunity to correct any deficiencies in an ALJ's hypothetical).